LITTLETON PARK JOYCE UGHETTA & KELLY LLP
Attorneys for Plaintiff
Arrowood Indemnity Company
4 Manhattanville Road, Suite 202
Purchase, New York 10577
(914) 417-3400

By: Robert L. Joyce, Esq.


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
x

| | | |
|---|---|---|
| ARROWOOD INDEMNITY COMPANY, formerly known as ROYAL INDEMNITY COMPANY, successor-in-interest to ROYAL INSURANCE COMPANY, | : : : : : | Case No.<br><br>COMPLAINT |
| Plaintiff, | : : | |
| -against- | : : | |
| TRAVELERS INDEMNITY COMPANY, FEDERAL INSURANCE COMPANY, and CONTINENTAL CASUALTY COMPANY, | : : : : | |
| Defendants. | : | |

---------------------------------------------------------
x

Plaintiff Arrowood Indemnity Company formerly known as Royal Indemnity Company and successor-in-interest to Royal Insurance Company ("Arrowood"), by and through its undersigned counsel, brings this Complaint seeking declaratory judgment against defendants Travelers Indemnity Company ("Travelers"), Federal Insurance Company ("Federal"), and Continental Insurance Company ("Continental"), and states as follows:

## NATURE OF THE ACTION

1. This is a civil action for declaratory relief pursuant to 28 U.S.C. § 2201 to determine the obligations, relationships, rights and responsibilities of Arrowood, Travelers, Federal, and

Continental to its respective insureds in connection with a personal injury lawsuit that is currently pending in the New York State Supreme Court, Westchester County, in which the plaintiff seeks damages for bodily injuries allegedly sustained from a slip and fall.

## FACTUAL BACKGROUND

### *The Underlying Claim*

2.   Carol Ann Zeppetelli ("Zeppetelli") previously filed suit in the Supreme Court of the State of New York, Westchester County, under index number 18615/1998, against 1372 Broadway LLC ("1372 Broadway") and Grubb & Ellis Management Services, Inc. ("Grubb & Ellis") (collectively, the "Underlying Defendants"), in which she alleged that she suffered personal injuries when she slipped on defective interior stairs at 1372 Broadway, New York, New York (the "Underlying Action").

### *The Lease*

3.   Zeppetelli's employer, Dyersburg Fabrics L.P. ("Dyersburg") entered an *Agreement of Lease* dated August 30, 1996 ("Lease"), under which it leased a portion of the premises at 1372 Broadway, New York, New York (the "Leased Premises") 1372 Broadway.  A copy of the Lease is Annexed as Exhibit A.

4.   Grubb & Ellis is 1372 Broadway's managing agent for the building located at 1372 Broadway, New York, New York.

5.   The Lease includes an indemnity clause under which Dyersburg undertook to indemnify 1372 Broadway and Grubb & Ellis for any accidents occurring within the premises leased to Dyersburg arising out of Dyersburg's operations in the Leased Premises:

> 37. INDEMNITY. Tenant shall not do or permit any act or thing to be done upon the Premises which may subject Landlord to any liability or

responsibility for injury, damages to persons or property or to any liability by reason of any violation of law or of any legal requirement of public authority, but shall exercise such control over the Premises as to fully protect Landlord against any such liability.  ***Tenant agrees to indemnify and save harmless Landlord*** from and against (i) ***all claims*** of whatever nature against Landlord ***arising from any act, omission*** (where there is an obligation to act) ***or negligence of Tenant, its contractors***, licensees, agents, servants, employees, invitees or visitors, including any claims arising from any act, omission (where there is an obligation to act) or negligence of Landlord and Tenant, (ii) ***all claims against Landlord arising from any accident, injury*** or damage whatsoever ***caused to any person*** or to the property of any person and occurring during the Term in or about the Premises, (iii) all claims against. Landlord arising from any accident, injury or damage to any person, entity or property, occurring outside of the Premises but anywhere within or about the Real Property, where such accident, injury or damage results or is claimed to have resulted from an act or omission of Tenant or Tenant's agents, employees, invitees or visitors, including any claims arising from any act, omission or negligence of Landlord and Tenant, and (iv) any breach, violation or nonperformance of any covenant, condition or agreement in this Lease set forth and contained on the part of Tenant to be fulfilled, kept, observed and performed and (v) any claim, loss or liability arising or claimed to arise from Tenant, or any of Tenant's contractors, licensees, agents, servants, employees, invitees or visitors causing or permitting any Hazardous Substance to be brought upon, kept or used in or about the Premises or the Real Property or any seepage, escape or release of such Hazardous Substances. As used herein and in all other provisions in this Lease containing indemnities made for the benefit of Landlord, the term "Landlord" shall mean ***Axiom Real Estate Management, Inc. and 1372 Broadway LLC*** and ***their respective parent companies*** and/or corporations, their respective controlled, associated, affiliated and subsidiary companies and/or corporations and their respective members, officers, partners, agents, consultants, servants, employees, sublessees and assigns.  This indemnity and hold harmless agreement shall include indemnity from and against any and all liability, fines, suits, demands, costs and expenses of any kind or nature incurred in or in connection with any such claim or proceeding brought thereon, and the defense thereof.

(Emphasis added.)

6.   Upon information and belief, Axiom Real Estate Management, Inc., is a subsidiary of Grubb & Ellis.

7.   The Lease also includes an insurance clause under which Dyersburg undertook to procure insurance as stated therein.  The Lease's insurance clause states, in part:

9. <u>INSURANCE</u>

A. Tenant's Insurance.  Tenant shall obtain at its own expense and keep in full force and effect during the Term, a policy of commercial general liability insurance (including, without limitation, insurance covering Tenant's contractual liability under this Lease), under which Tenant is named as the insured, and ***Landlord, Landlord's managing agent***, the present and any future mortgagee of the Real Property of the Building and/or such other designees specified in writing by Landlord from time to time, ***are named as additional insureds***.  Such policy shall contain (i) a provision that no act or omission of Tenant shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, (ii) a waiver of subrogation against Landlord or a consent to a waiver of right of recovery against Landlord, and (iii) an agreement by the insurer that it will not make any claim against or seek to recover from Landlord for any loss, damage or claim whether or not covered under such policy.  Such policy shall also contain a provision which provides the insurance company will not cancel or refuse to renew the policy, or change in any material way the nature or extent of the coverage provided by such policy, without first giving Landlord at least thirty (30) days written notice by certified mail, return receipt requested, which notice shall contain the policy number and the names of the insureds and policy holder.  The ***minimum limits of liability*** shall be a combined single limit with respect to each occurrence in an amount of not less than ***$3,000,000*** for injury (or death) and damage to property.  Tenant shall also maintain at its own expense during the Term a policy of workers' compensation insurance providing statutory benefits for Tenant's employees and employer's liability. Tenant shall provide to Landlord upon execution of this Lease and at least thirty (30) days prior to the termination of any existing policy, a certificate evidencing the effectiveness of the insurance policies required to be maintained hereunder which shall include the named insured, carrier, policy number, limits of liability, effective date, the name of the insurance agent and its telephone number.  Tenant shall have no right to obtain any of the insurance required hereunder pursuant to a blanket policy covering other properties unless the blanket policy contains an endorsement that names Landlord, Landlord's managing agent and/or designees specified by Landlord from time to time, as additional insureds, references the Premises, and guarantees a minimum limit available for the Premises equal to the amount of insurance required to be maintained hereunder.  Each policy required hereunder shall contain a clause that the policy and the coverage evidenced thereby shall be primary with respect to any policies carried by Landlord, and that any coverage carried by landlords shall be excess insurance.  The limits of the insurance required under this subsection shall not limit the liability of the Tenant under this Lease.  All insurance required to be carried by Tenant pursuant to the terms of this Lease shall be effected under valid and enforceable policies issued by reputable and independent insurers permitted to do business in the State of New York, and rated in Best's Insurance Guide, or any successor thereto (or if there be none, an

organization having a national reputation) as having a general policyholder
rating of "A" and a financial rating of at least "13".  In the event that Tenant
fails to continuously maintain insurance as required by this subsection,
Landlord may, at its option and without relieving Tenant of any obligation
hereunder, order such insurance and pay for the same at the expense of
Tenant.  In such event, Tenant shall repay the amount expended by Landlord,
with interest thereon, immediately upon Landlord's written demand therefor.

(Emphasis added.)

8.  The Lease also includes a Schedule D, which states, in part:

INSURANCE REQUIREMENTS

LIABILITY LIMITATIONS

A.  Comprehensive or Commercial General Liability insurance written on
an occurrence basis, to afford protection *of $3,000,000 combined single
limit for personal injury*, bodily injury and/or death and Broad Form
property damage arising out of any one occurrence; and which insurance
shall include coverage for premises-operations (including explosion,
collapse and underground coverage), elevators, contractual liability,
owner's and contractor's protective liability, and completed operations
liability.

(Emphasis added.)

9.  Schedule D of the Lease also identifies entities, including the Underlying Defendants,
which Dyersburg undertook to have named as additional insureds on its general liability policies.

*The Construction Contract*

10. Dyersburg hired Structure Tone, Inc. ("Structure Tone") under an Abbreviated Form
of Agreement Between Owner and Contractor for Construction Project of Limited Scope where
the Basis of Payment is a Stipulated Sum dated October 18, 1996 ("Construction Agreement") to
perform construction work at the Leased Premises.  A copy of the Construction Agreement is
attached as Exhibit B.

5

11. Zeppetelli alleges she fell on a staircase within the Leased Premises; upon information and belief, Structure Tone built that staircase as part of its work under the Construction Contract.

12. The Construction Contract contains an indemnity provision obligating Structure Tone to defend and indemnify Dyersburg as well as the Underlying Defendants:

> 9.12 To the fullest extent permitted by law, the ***Contractor shall indemnify and hold harmless the Owner***, its affiliates, Architect, Architect's consultants, and ***agents*** and employees ***of any of them*** from and ***against claims***, damages, losses and expenses, including but not limited to attorneys' fees, court costs, disbursements, penalties or fines ***arising out of or resulting from performance of the Work***, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 9.12.

(Emphasis added.)

13. The Construction Agreement also contains an insurance clause under which Structure Tone agreed to purchase general liability insurance:

> **Article 17**
> **Insurance**
>
> 17.1(a) The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located insurance for protection from claims under workers' or workmen's compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and from claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations under the contract, whether such operations be by the Contractor or by a Subcontractor or anyone directly or indirectly employed by any of them.  This insurance shall be written for not lets than limits of liability specified in the Contract

6

Documents or required by law, whichever coverage is greater, ***and shall include contractual liability insurance applicable to the Contractor's obligations under Paragraph 9.12***.  Certificates of such insurance shall be filed with the Owner prior to the commencement of the Work.

17.1(b) Contractor shall maintain the insurance coverage required by the Contract Documents, including without limitation, the requirements set forth in the Lease.

(Emphasis added.)

14. Section 6.1.6 of the Construction Contract includes as one of the Contract Documents, Schedule D to the Lease discussed above.

15. Structure Tone agreed, in section 1.1 of the Construction Contract to "execute the entire Work described by the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others."

16. Section 7.1 of the Construction Contract states, in part, "The Contract Documents are complementary, and what is required by on shall be as binding as if required by all."

***Insurance***

17. Upon information and belief, Travelers issued a general liability policy to Structure Tone (policy number 001 CO 6134 144 CUA), which provides primary insurance coverage, with a limit of $1,000,000, for the time period that includes the date of loss alleged in the Underlying Action.

18. Travelers has assumed the defense and indemnity of the Underlying Defendants as additional insureds under its policy in connection with the Underlying Action.

19. Upon information and belief, Continental issued an umbrella policy to Structure Tone (number CPU 57343500), with a $10,000,000 limit for the time period that includes the date of loss alleged in the Underlying Action and under which Continental, subject to the policy's terms,

conditions, limits and exclusions, owes a duty to indemnify the Underlying Defendants in connection with the Underlying Action.

20. Upon information and belief, Federal issued a general liability policy to Dyersburg (number 35321603), with limits of $1,000,000 per occurrence, for the time period that includes the date of loss alleged in the Underlying Action, and under which Federal, subject to the terms, conditions, limits and exclusions of its policy, has a duty to indemnify and defend the Underlying Defendants in connection with the Underlying Action.

21. Arrowood issued a commercial general liability policy that provides coverage to the Underlying Defendants with a $1,000,000 general aggregate limit for the time period that includes the date of loss alleged in the Underlying Action.

*Underlying Action*

22. Upon information and belief, the Underlying Action is currently set for trial on June 11, 2018.

23. Upon information and belief, Zeppetelli is seeking to recover damages in excess of the limits of Travelers' policy.

24. Despite Arrowood's request, Federal and Continental have not reached an agreement regarding the priority of coverage as between them in connection with the coverage obligation that both owe to the Underlying Defendants under their policies.

## THE PARTIES, JURISDICTION AND VENUE

25. Arrowood is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in North Carolina.

8

26. Upon information and belief, Travelers is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in Connecticut.

27. Upon information and belief, Travelers has, at all times relevant to this action, been authorized to conduct and has conducted business in the State of New York.

28. Upon information and belief, the claims alleged in this complaint arise from Travelers' transactions of business within the State of New York.

29. Upon information and belief, Continental is an Illinois corporation with its principal place of business in Illinois.

30. Upon information and belief, Continental has, at all times relevant to this action, been authorized to conduct and has conducted business in the State of New York.

31. Upon information and belief, the claims alleged in this complaint arise from Continental's transactions of business within the State of New York.

32. Upon information and belief, Federal is an Indiana corporation with its principal place of business in New Jersey.

33. Upon information and belief, Federal has, at all times relevant to this action, been authorized to conduct and has conducted business in the State of New York.

34. Upon information and belief, the claims alleged in this complaint arise from Federal's transactions of business within the State of New York.

35. This Court has jurisdiction over this action pursuant to CPLR § 302(a).

36. The amount in controversy exceeds $75,000.

37. Venue is proper in the Southern District of New York because a substantial part of the events giving rise to the claim occurred in the District, in Westchester County.

38. An actual controversy exists between the parties within the Court's jurisdiction, such that the Court may declare the plaintiff's rights and other legal relations as an interested party seeking such declaration.

## DECLARATORY JUDGMENT

39. Both Federal and Continental have acknowledged that the Underlying Defendants have status as additional insureds under their respective policies but dispute the ordering of the coverage as between the two.

40. Federal acknowledges that its coverage obligation to the Underlying Defendants is primary to the Arrowwood policies coverage obligation to those parties but maintains that it is excess to the Continental policies coverage to the Underlying defendants.

41. For its part, Continental maintains that, as an umbrella policy, its coverage obligation to the Underlying Defendants is excess to all primary policies covering the Underlying Defendants either as named or additional insureds including the policy issued by Federal.

42. As a result of the priority of coverage dispute between Federal and Continental, neither will acknowledge a coverage obligation to Underlying Defendants for the layer above the $1 million limit of liability of the Travelers policy.

43. An actual, present and justiciable controversy exists regarding the priority of coverage between Federal and Continental and which carrier provides the next layer of coverage to the Underlying Defendants in the event the Travelers policy exhausts or is insufficient to satisfy any judgment resulting in the Underlying Action.  The issuance of declaratory relief by

this Court is necessary to resolve part or all of the existing controversy between Arrowood, Travelers, Continental, and Federal.

44. Arrowood seeks a judicial determination regarding the priority of coverage as between Federal, Continental, and Arrowood in connection with their coverage obligations to the Underlying Defendants under their policies for the Underlying Action.

**WHEREFORE,** Plaintiff demands judgment:

a. Declaring the priority of coverage as between Federal, Continental, and Arrowwood in connection with the coverage obligation that they owe to 1372 Broadway and Grubb & Ellis under their policies for the Underlying Action;

b. Declaring that the coverage obligation to 1372 Broadway and Grubb & Ellis as additional insureds under the Federal policy or the Continental policy, or both, is primary to the coverage obligation to these parties as named insureds under the Arrowwood policy. in connection with the Underlying Action;

c. and together with the costs and disbursements of action.

Dated: April___, 2018
       Purchase, New York

                                        Yours, etc.,

                                        **LITTLETON PARK JOYCE
                                        UGHETTA & KELLY LLP**
                                        Attorneys for Plaintiff
                                        Arrowood Indemnity Company


                                        _____/s/Robert L. Joyce_____
                                        By: Robert L. Joyce, Esq. (RLJ 2840)
                                        4 Manhattanville Road, Suite 202
                                        Purchase, New York 10577
                                        (914) 417-3400

11